UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

KEVIN LEROY FULLINGTON, SR.,      )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          Case No. 2:23-cv-00049 SRC
                                  )
ANNE PRECYTHE et al.,             )
                                  )
          Defendants.             )

## Memorandum and Order

Plaintiff Kevin Fullington, Sr., an inmate at the Tipton Correctional Center, *see* doc. 13, moves for leave to commence this civil action without prepaying fees or costs, doc. 2.  The Court grants the motion and assesses an initial partial filing fee of $3.28.  *See* 28 U.S.C. § 1915(b)(1).  Furthermore, based upon a review of the complaint, the Court strikes and dismisses without prejudice Defendants Anne Precythe, Clay Stanton, Christine Gilmore and S. Carr pursuant to Federal Rule of Civil Procedure 21 as improperly joined.  Additionally, the Court orders Fullington to show cause why the Court should not dismiss his complaint due to failure to fully exhaust his administrative remedies.

## I.      Background

Pursuant to 42 U.S.C. § 1983, Fullington alleges violations of his civil rights relating to events that occurred during his incarceration at Northeast Correctional Center ("NECC").  Doc. 1.  He names six defendants in this action:  Anne Precythe; Clay Stanton; Taylor Preston; S. Carr; Christine Gilmore; and Leslie Labon.  *Id.* at 2–3, 10–11.[1]  Fullington sues the defendants in

---

[1] The Court cites to page numbers as assigned by CM/ECF.

both their individual and official capacities.  *Id.*  Fullington alleges a multitude of unrelated claims in this lawsuit against the defendants set forth across 65 pages of the complaint and accompanying documents.  His conclusory allegations, however, fail to set forth specific facts annotating his claims for relief.  Below, the Court examines each of Fullington's allegations separately.

Fullington alleges that on May 16, 2023, Preston, a Functional Unit Manager, opened and reviewed his "privileged legal mail" from the Internal Revenue Service.  *Id.* at 13–14.  Preston then gave Fullington the mail.  *Id.* at 14.  When Fullington received it, the envelope was missing an enclosure:  a photocopy of a check.  *Id.*  Fullington claims that on May 16, 2023, he asked Preston for an Institutional Resolution Request ("IRR") form to grieve the incident, but her officed denied him the form.  *See id.*  Additionally, on May 18, 2023, Fullington discussed the mail incident with Gilmore, a caseworker, and requested an IRR form.  *Id.* at 13, 15.  She also denied him the form.  *Id.* at 15.

The next day, Fullington attempted to find Preston in the 2 House Rotunda, but Gilmore stopped him and told him to return to his cell.  *Id.*  Fullington claims that, on that same day, he drafted a letter to Stanton, the Warden at NECC, relating to the mail incident in which he asked for the "Right to Redress."  *Id.*  Fullington did not include a copy of the letter with his complaint or articulate what "redress" he sought from Warden Stanton.  *See* doc. 1.

On both May 18, 2023, and May 19, 2023, Fullington attempted to send mail to the IRS, but the mailroom clerk, Carr, rejected the mail.  *Id.* at 13, 16.  Fullington has neither explained why Carr rejected his mail nor included copies of the rejection notices with his complaint.  *See* doc. 1.  Fullington also failed to indicate what mail he attempted to send to the IRS.  *See id.*

2

Around 8:00 a.m. on May 20, 2023, Fullington asked Gilmore if he could go to the medical unit to get his once-daily pain patch as ordered by the institutional physician. *Id.* at 16. Gilmore denied his request and told him to return to his cell. *Id.*  Fullington does not explain why Gilmore denied him movement to medical and fails to indicate if he had previously filed a medical-service request ("MSR") regarding the need for the pain patch or if he was able to get his pain patch later. *See* doc. 1.  Moreover, Fullington does not indicate in his complaint why the physician prescribed him the pain patch. *See id.*  In his declaration in support of his motion for a temporary restraining order or temporary injunction, Fullington states that he was given a pain patch due to a diagnosis of spina bifida. *See* doc. 5 at 3.  Nevertheless, he indicates that "the pain patch didn't seem to work." *Id.*  In his complaint, Fullington alleges he suffers from asthma, hypertension, a ruptured disc in his lumbar spine, sciatica, spondylosis at L5, and anterolisthesis and spina bifida at L5 on S1.  Doc. 1 at 39.  He states that he relies partially on a wheelchair, but he does not address how much he can walk or what assistive devices he needs to do so. *Id.* at 40.

Fullington asserts that on May 20, 2023, Gilmore also denied him access to the mailbox to mail his legal mail. *Id.* at 17.  However, Fullington does not indicate what his alleged "legal mail" consisted of, or who he attempted to send the mail to. *See* doc. 1.  Fullington's assertion that he attempted to mail "legal mail" is a legal conclusion that is not entitled to deference. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts 'are not bound to accept as true a legal conclusion couched as a factual allegation,' and '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

On May 22, 2023, Fullington once again asked Gilmore and Preston for a copy of an IRR form.  Doc. 1 at 17.  They both denied his request. *Id.*

3

On May 23, 2023, Gilmore denied Fullington the "right to exercise" during 2 House yard time. *Id.* at 18.  Fullington does not provide any facts relating to this alleged incident. *See* doc. 1.  He does not indicate if "yard time" was allegedly allowed in the recreation yard outside or if it entailed inside "yard time." *See id.*  He also does not indicate if he had to stay in his cell at that time, or if Gilmore told him that he could not have "yard time" due to a disciplinary action that occurred that day. *See id.*

On May 24, 2023, Gilmore refused Fullington access to the law library to "work on legal work." *Id.* at 18.  Fullington does not indicate, however, what "legal work" he wanted to work on in the library and if the denial of his access to the library impeded his ability to file in an ongoing case. *See* doc. 1.  Again, Fullington's conclusory assertion that he was working on "legal work" is not entitled to deference without further factual information. *Torti*, 868 F.3d at 671.

On the morning of May 25, 2023, Fullington asked Gilmore if he could go to medical to get his once-daily pain patch.  Doc. 1 at 18.  But Gilmore denied his request. *Id.*  That same day, Gilmore denied Fullington's request to get an MSR form from "sick call." *See id.* at 19. Fullington does not indicate why Gilmore denied him movement to medical. *See* doc. 1.  He also fails to indicate if he had previously filed an MSR regarding the need for the pain patch, whether he needed to file an MSR or sick-call form each day to proceed to medical to obtain his pain patch, or if he eventually got the pain patch. *See id.*  Regarding his request to get an MSR, Fullington does not indicate why he sought an MSR. *See id.*  Without such facts, the Court cannot evaluate Fullington's deliberate indifference-to-serious-medical-needs claim.

On May 26, 2023, Fullington requested to speak to Preston concerning legal advice on his Form 40, *id.* at 19, which is a Missouri-post-conviction motion.  Gilmore attempted to

interrupt that discussion.  *Id.*  Fullington has not provided the Court with any information as to how this interruption allegedly impacted his federal or constitutional rights.  *See* doc. 1.

On May 27, 2023, Gilmore denied Fullington "access to exercise on the yard with other inmates from the 2 House," and access to the mailbox.  *Id.* at 19–20.  Fullington again fails to provide any additional information relating to these incidents.  *See* doc. 1.  Namely, Fullington fails to indicate what he wanted to mail and why Gilmore purportedly failed to allow him the ability to access the mailbox.  *See id.*

On May 28, 2023, Gilmore denied Fullington access to the 2 House Rotunda to get a sick-call form, i.e., an MSR.  *Id.* at 20.  He does not indicate why he needed the MSR, what medical issue he suffered from, or if Gilmore knew about the issue.  *See* doc. 1.  He simply states that Gilmore "refused plaintiff the right to access the medical unit."  *Id.* at 20.  Although Fullington claims his requests for an MSR to get pain patches on several dates in May 2023 were denied, the Court notes that Fullington appears to have only filed an IRR regarding his privileged-mail complaint. *See* doc. 1 at 3–4, 11, 13.

On May 29, 2023, Fullington drafted a letter to Warden Stanton.  *Id.* at 20.  Fullington has not included the letter in the exhibits to his complaint; thus, the Court cannot discern the matters he discussed in his letter.  However, he claims that his letter informed Warden Stanton of Gilmore's "continued retaliatory behavior."  *Id.* at 20–21.  Fullington has indicated what "retaliatory" behavior he ascribes to Gilmore.  *See* doc. 1.

On May 29, 2023, when Fullington sought access to 2 House Rotunda, to mail letters and obtain a "sick call," or MSR form, Gilmore "denied the movement" and denied him access to the medical unit "once again."  *Id.* at 21.  However, Fullington again fails to indicate what type of letters he attempted to mail and why he attempted to seek out medical treatment.  *See* doc. 1.

5

Fullington has included in his exhibits to his complaint a copy of the IRR he filed on May 27, 2023, regarding what he perceived as the denial of his constitutional rights when Preston opened his mail from the IRS.  *See* doc. 1-1 at 11.  Fullington obtained this IRR form on May 25, 2023, but he does not indicate how he obtained it or from whom.  *See* doc. 1 at 19.  He signed this IRR on May 27, 2023.  *Id.*  In the IRR, Fullington stated:

> As defined and pursuant to IS 13-1.1 – Offender Mail Procedures.  The IRS is a[n] appointed Federal government office and any mail to and from them is privileged mail!!  And shall only be opened and inspected in the presence of the offender.

Doc. 1-1 at 11.  For relief in his IRR, Fullington asked that any mail from the IRS be opened in his presence, and he also sought to have NECC allow him to seal all outgoing mail to the IRS.  *Id.*  The IRR indicates that Gilmore discussed the matter with Fullington on May 31, 2023, and Gilmore told him that any mail to and from the IRS did not constitute special mail.  *Id.*  However, the discussion did not resolve Fullington's IRR.  *Id.*  Instead, Preston told him that the matter would have to be "taken up" with "office heads" in Jefferson City, Missouri.  Doc. 1 at 21.  As a result, on May 31, 2023, Fullington wrote a letter to Precythe "stating the issues and facts asking for a remedy."  *Id.* at 22.  Fullington has not included of copy of this letter or indicated what remedy he sought from Precythe.

On May 31, 2023, Fullington discussed his IRR with Gilmore in her office.  *Id.*  At this time, he asked Gilmore for a second IRR form, but she refused and explained that MDOC rules allowed inmates to pursue only one IRR at a time.  *Id.*  Fullington claims that Policy D5 3.2 "states otherwise."  *Id.*  Nonetheless, Gilmore did not provide Fullington with a new IRR form. *Id.*  Gilmore also refused, on June 1, 2023, to allow Fullington to access the 2 House Rotunda, to obtain a "sick call," or MSR form, or to mail a "time sensitive" Form 40 to Douglas County, Missouri.  *Id.*

6

The Court notes that the Form 40 Fullington was attempting to mail likely related to Fullington's criminal convictions in state court.  Fullington was convicted in Douglas County Circuit Court on December 6, 2022.  *State v. Fullington*, No. 20DG-CR00366-01 (44th Jud. Cir., Douglas Cnty. Ct.).  That same day, he was sentenced in a second case in Douglas County.  *State v. Fullington*, No. 22DG-CR00214-01 (44th Jud. Cir., Douglas Cnty. Ct.).  Because Fullington failed to appeal his convictions, his post-conviction motions to vacate (i.e., his Form 40) were due to the Circuit Court no later than 180 days from the date the court entered his sentence.  *See* Mo. S. Ct. R. 29.15(b).  Thus, the Form 40 was due on June 5, 2023.  According to MissouriCase.Net, Fullington placed his post-conviction motions in the prison mailing system at NECC on or about May 31, 2023, and the court received and docketed them on June 5, 2023.  *See Fullington v. State*, No. 23DG-CC00099 (44th Jud. Cir., Douglas Cnty. Ct.); *Fullington v. State*, No. 23DG-CC00098 (44th Jud. Cir., Douglas Cnty. Ct.).  As such, Fullington's inability to access the mailbox on June 1, 2023, does not appear to have prejudiced him.  Moreover, he cannot raise an access-to-courts claim under the First Amendment without showing such prejudice.  *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) ("To prove a violation of the right of meaningful access to the courts, a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.").

On June 1, 2023, Preston and Gilmore reviewed Fullington's IRR and provided him with a letter regarding it.  Doc. 1-1 at 12.  The letter stated:

> Your Informal Resolution Request has been received, reviewed and investigated.  You claim that your IRS mail is being opened by the mail room

without you being present and it is legal mail.  You want your mail from the IRS to be sent to the housing unit and opened in front of you.

According to the statement from the mail room staff, per SOP 13-1.1 Mail Room Procedures the definition of Privileged Mail is "Mail being sent to, or received from, consulates, judges, attorneys, courts elected, and appointed stated and federal officials, sheriffs, CAO's, deputy wardens or assistant wardens and central office selection heads."  The IRS does not fall into any of these categories.  It does however fall into the Special Mail category which allows it to be opened and inspected by the mail room.

You failed to prove staff's negligence or error.  Your request is denied, no further action required, and this should resolve your issue.

*Id.*  On June 12, 2023, a third individual also reviewed Fullington's IRR and signed the letter.

*Id.*  The Court, however, is unable to read this individual's name.

On June 3, 2023, Gilmore denied Fullington "access to the yard for exercise."  Doc. 1 at 23.  However, Fullington again fails to provide any additional information regarding this incident, such as whether he was allowed to exercise at a later time that day, whether he was allowed to exercise inside, or whether he was subject to disciplinary restrictions that excluded him from recreation.  *See* doc. 1.

On June 5, 2023, Fullington received a letter from Warden Stanton in response to the letter Fullington sent him on May 29, 2023.  *Id.* at 23.  Fullington has not provided the Court with a copy of Warden Stanton's letter.  However, Fullington states that Stanton "failed to address any of the concerns cited in the correspondences."  *Id.*

On June 6, 2023, Fullington drafted a "letter to the grievance office" regarding Gilmore's "unprofessional conduct" and the "denial of rights."  *Id.*  Although Fullington does not provide the name of the person he wrote the letter to, the Court presumes that he wrote to Labon, the Grievance Officer at NECC.  But once again, Fullington fails to attach the letter and fails to indicate what his letter to the "grievance office" said regarding the alleged denial of rights.  *See*

8

doc. 1.  Moreover, he has not indicated that he filed an IRR or grievance relating to Gilmore's alleged "denial of rights."  *See id.*

On June 7, 2023, Preston told Fullington that a conduct violation could be assessed against him for "skipping chains of command."  *Id.* at 23–24.  Fullington claims that he received a letter from Labon in response to his letter on June 8, 2023.  *Id.* at 24.  That letter failed to address the "concerns" Fullington cited to in his correspondence.  *Id.*  Fullington has not attached the letter Labon provided to him or elaborated on the correspondence between the two.  *See* doc. 1.  Fullington indicates that he wrote Labon another letter on June 11, 2023, asking for "a remedy."  *Id.* at 24.  He has not attached this letter to his complaint or indicated the remedy which he sought from Labon.  Labon allegedly responded to Fullington's June 11th letter indicating Fullington would be given an IRR form.  *Id.*

On June 11, 2023, Fullington filed a grievance relating to the mail issue.  *Id.* at 56.  In his grievance, Fullington stated:

> As defined in IS 13-1.1 The IRS is an appointed office of the Federal Government only open privileged mail in front of the offender and allow outgoing mail to be sealed addressed to the IRS.  *Look in Blacks Law Dictionary to define officials.

> Note:  I am still unable to obtain IRR Forms

Doc. 1-1 at 13.  An unnamed individual provided Fullington an IRR form on June 15, 2023.
Doc. 1 at 25.

On June 16, 2023, Warden Stanton filed a response to Fullington's grievance.  *Id.*; doc.1-1 at 14.  In the response, Warden Stanton explained that the definition of "privileged mail" does not include mail to and from the IRS.  Doc. 1-1 at 14.  Thus, "[p]er policy, it is to be opened an[d] inspected by the mail room staff prior to being delivered to the offender."  *Id.*  Warden Stanton also told Fullington that an investigation into his complaint found no violations of policy

9

or his rights.  *Id.*  Thus, Warden Stanton considered the matter resolved.  *Id.*  As noted on the "Offender Kite Response Form," however, Fullington was allowed to file a grievance appeal of this matter.  Doc. 1 at 44; *see also* Missouri Department of Corrections, *Offender Rulebook* 68 (2019) (outlining the grievance process).[2]  The record does not contain any indication that Fullington did so.

On June 20, 2023, Fullington drafted new correspondence to Warden Stanton "addressing the continued retaliation."  Doc. 1 at 26.  Fullington has not attached the letter to his complaint, nor has Fullington indicated what he discussed in his letter to Stanton.

On June 21, 2023, Fullington filed an IRR, complaining about the denial of IRR forms.  Doc. 1-1 at 3.  Fullington signed this IRR on June 15, 2023.  *Id.*  However, NECC did not receive the IRR until June 21, 2023.  *Id.*  The IRR stated:

> 5/16/23 I received "Privileged Mail" in the back office.  I asked Mr. Ochs and Ms. Preston both for an IRR and was denied.  Was told to see caseworker Ms. Gilmore on the 18th.  5/18/23 seen Ms. Gilmore in back office & requested an IRR but was denied.  Wrote the Warden a letter & put in mailbox on 5/20/23.  5/22/23 IRR request denied again.

*Id.*  Gilmore discussed the IRR with Fullington on the same date Gilmore received it.  *Id.*  Gilmore wrote on the IRR, "Talked about how he had been given IRR's."  *Id.*

Fullington has included with his complaint a letter he wrote to Preston after a discussion in her office on June 21, 2023.  *Id.* at 2.  In the letter, Fullington asserts that he and Preston "discussed a remedy" that included the writing of a "kite," or informal complaint, to the classification office to obtain an IRR.  *Id.*  Fullington takes issue with the fact that when he was

---

[2] The Court takes judicial notice of the Missouri Department of Corrections Offender Rulebook, publicly available at:
https://doc.mo.gov/sites/doc/files/media/pdf/2020/03/Offender_Rulebook_REVISED_2019.pdf.

told to sign his IRR form there were no comments from staff written in the "Staff Comments" section of the IRR form.  *Id.*; doc. 1 at 26.  Fullington also states that he and Preston did not discuss "[h]ow [he] had been given IRRs."  Doc. 1-1 at 2.  Rather, Preston suggested that Fullington "send her a letter and in return she would produce an IRR form in the mail to" him. Doc. 1 at 26.  Fullington indicates that when he and Preston's conversation had finished, he left the room to return to his cell.  *Id.* at 26–27.  However, when he realized he needed a copy of the IRR, he walked back to Preston's office to request the copy.  *Id.*  When he was given the form back, Gilmore had entered comments and signed his IRR.  *Id.* at 27.

Fullington asserted in his letter that he did not think Gilmore should have signed his IRR response because pursuant to "Departmental Policy D5-3.2, an alternate respondent is needed to sign @ the institution level when the person being grieved would normally sign."  Doc. 1-1 at 2; *see also* doc. 1 at 27.  Additionally, Fullington pointed out that Gilmore should not have provided staff comments when she was not the one who discussed the matter with him and she was not present when Preston did so.  Doc. 1-1 at 2.  As a remedy, Fullington sought a grievance form.  *Id.*

On June 22, 2023, Preston sent Fullington a revised copy of his IRR with comments. Doc. 1 at 27–28.  Fullington has provided a second copy of his IRR with his complaint.  Doc. 1-1 at 4.  Although Fullington's portion of the IRR is the same, Gilmore's portion has been stricken, as has Gilmore's name as the responding staff member.  *Id.*  In place of Gilmore's name, Preston wrote her name as the responding staff member, and in the "Discussion of Complaint" portion of the IRR, Preston wrote, "talked about putting kites in box and open hours to receive IRRs."  *Id*. There is no indication in the complaint that Fullington filed a grievance relative to this IRR.

On June 22, 2023, Fullington went to the library to do "legal work."  Doc. 1 at 28.

Gilmore was working in the library at the time.  *Id.*  Fullington noticed Gilmore eavesdropping

on his conversation with the law clerk and staring at him with a smile.  *Id.*  Gilmore then got on

the phone with someone.  *Id.*  When Fullington attempted to return to his unit, Officer Pope

stopped him on the crosswalk.  *Id.* at 29.  Fullington does not name Officer Pope as a defendant

in this action.  *See* doc. 1.  Officer Pope informed Fullington that she had conducted a search of

his cell.  *Id.* at 29.  Although she indicated she had not found contraband, Fullington states that

he "found his legal folders sitting on his desk in complete dissaray [sic]."  *Id.*  He asked Pope

why he was being "targeted," complaining he had been subject to several searches in the past

few weeks.  *Id.*  In fact, Fullington complains that his cell was searched on the following dates:

May 18, 2023, May 20, 2023, Jule 1, 2023, June 8, 2023, June 15, 2023, June 22, 2023, July 4,

2023, and July 13, 2023.  *Id.* at 30.  Pope shrugged her shoulders at Fullington's question.  *Id.* at

29.  Fullington claims that an inmate's cell should not be searched more than twice per month

according to an unnamed Department of Corrections policy.  *Id.* at 30.  He has not included the

policy at issue or indicated whether he grieved the cell searches.

Fullington complains that Gilmore worked in 2 House on both June 23, 2023, and June

24, 2023.  *Id.*  He claims that on June 23, 2023, the Chaplain at NECC handed out passes to the

housing units for distribution for a religious banquet set to occur on June 24, 2023.  *Id.* at 30–31.

Fullington's religious group was hosting this banquet, and he was supposed to receive a pass to

attend the service.  *Id.*  But his pass was lost in the 2 House Control Center.  *Id.* at 31.

Fullington attempts to summarize his claims against defendants.  *Id.* at 32–41.  Based on

the facts as outlined above, as well as the allegations in the "Injuries" portion of the complaint,

the Court finds that Fullington has alleged several claims against each defendant.  Against

Preston, Fullington alleges:  (1) violation of his First Amendment rights for opening his "legal mail" from the IRS on May 16, 2023; (2) violation of his First Amendment rights and the Missouri Bill of Rights § 9 for denying Fullington an IRR form in her office on May 16, 2023, and May 22, 2023; and (3) retaliation in violation of the First Amendment for threatening Fullington on June 7, 2023, with a conduct violation for skipping the chain of command.

Against Gilmore, Fullington alleges:  (1) violation of his First Amendment rights and the Missouri Bill of Rights § 9 for denying him an IRR form in her office on May 18, 2023, May 22, 2023, and May 31, 2023; (2) deliberate indifference to his serious medical needs in violation of the Eighth Amendment for failing to allow him to go to medical for a pain patch, or get an MSR form on May 18, 2023, May 19, 2023, May 20, 2023, May 25, 2023, May 28, 2023, May 29, 2023, and June 1, 2023; (3) violations of the Fourteenth Amendment, the First Amendment and the Missouri Bill of Rights § 10, for restricting Fullington's access to the mailbox in 2 House Rotunda on May 20, 2023, May 27, 2023, May 29, 2023, and June 1, 2023, for restricting Fullington's movement on May 19, 2023 when he sought out Preston, and for restricting his attempts to access the law library on May 24, 2023; (4) denial of recreation in violation of the Eighth Amendment on May 23, 2023, May 27, 2023, and June 3, 2023; (5) retaliation in violation of the First Amendment for losing his religious banquet pass on June 24, 2023; and (6) retaliation in violation of the First Amendment for working in a conspiracy with Officer Pope to have Fullington's cell searched on May 18, 2023, May 23, 2023, June 8, 2023, June 15, 2023, June 22, 2023, July 4, 2023, and July 13, 2023.

Regarding Carr, Fullington alleges that Carr violated his First Amendment rights and the Missouri Bill of Rights § 2, when he rejected the mail Fullington attempted to send to the IRS on May 18, 2023, and May 19, 2023.

In addition, Fullington alleges that Stanton failed to "correct misconduct," including the illegal actions of others.  Doc. 1 at 33.  Fullington alleges that Stanton violated his Eighth Amendment rights and the Missouri Bill of Rights § 21, Precythe unlawfully failed to respond to his letters and failed to "correct . . . misconduct" by persons at NECC in violation of the Eighth Amendment, and Labon violated the Eighth Amendment by "encouraging actions of harassment and retaliation" and "choosing to ignore the allegations being presented to her on several occasions."  *Id.* at 36–37.  For relief in this action, Fullington seeks monetary damages and injunctive relief.

## II.    Legal standard

The Court must review a complaint filed in forma pauperis and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  An action is frivolous if it "lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  A claim is facially plausible when a petitioner "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although a petitioner need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint."  *Twombly*, 550 U.S. at 555 (citing 5C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)).  This standard "demands more than an unadorned, the-defendant-

14

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the Court to draw upon judicial experience and common sense. *Id.* at 679. The Court must assume the veracity of well-pleaded facts but need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

The Court liberally construes pro-se complaints. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Therefore, if the Court can discern the essence of an allegation, the Court "construe[s] the complaint in a way that permits the [pro-se party's] claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro-se complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts, *Stone*, 364 F.3d at 914–15, or interpret procedural rules to excuse mistakes by those who proceed without counsel, *see McNeil v. United States*, 508 U.S. 106, 113 (1993).

## III. Discussion

### A. The Court assesses an initial partial filing fee of $3.28.

Pursuant to Section 1915(b)(1), a prisoner bringing a civil action in forma pauperis must pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. 28 U.S.C. § 1915(b)(1). After payment of the initial partial filing fee, the prisoner must make

monthly payments of 20 percent of the preceding month's income credited to his account.  *Id.* at § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the prisoner pays the filing fee in full.  *Id.*

Fullington submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint.  A review of Fullington's account indicates an average monthly deposit of $16.42, and an average monthly balance of $10.13.  Fullington has insufficient funds to pay the entire filing fee.  Accordingly, the Court assesses an initial partial filing fee of $3.28, which is 20 percent of Fullington's average monthly deposit.

**B.    The Court severs and dismisses the majority of Fullington's claims because he improperly joined them under the Federal Rules of Civil Procedure.**

Fullington asserts across 65 pages of pleadings multiple unrelated claims against six defendants.  Such pleading practice is not allowed, especially in prisoner cases where litigants may be trying to avoid paying separate filing fees.  *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (discussing that a district court should question joinder of defendants and claims in prisoner cases).  Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

Persons . . .  may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

16

Therefore, Fullington cannot join, in a single lawsuit, multiple claims against different defendants related to events arising out of different transactions or occurrences.

Unrelated claims against different defendants belong in different suits, partly to ensure that prisoners pay the required filing fees.  The Prison Litigation Reform Act limits to three the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g).

Federal Rule of Civil Procedure 18(a) governs joinder of claims, and provides:

A party asserting a claim, counterclaim, crossclaim, or third-party claim, may join, either as independent or alternate claims, as many claims as it has against an opposing party.

In other words, "[c]laim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George*, 507 F.3d at 607.  "Unrelated claims against different defendants belong in different suits," in part, "to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Id.* (citing 28 U.S.C. § 1915(g)).

Rule 21 permits severance of claims if a petitioner improperly joined them.  The rule states, in pertinent part, that on motion or sua sponte, "the court may at any time, on just terms . . . sever any claim against a party."  Fed. R. Civ. P. 21.  Severance is appropriate when the claims are "discrete and separate," each "capable of resolution without dependence or effect on the other." *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (quoting *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000)).

When determining whether to sever claims pursuant to Rule 21, district courts often consider (1) whether the issues sought to be severed are significantly different from one another

17

and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. *See Off. Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000).  Courts frequently utilize these same considerations when examining a motion to bifurcate claims under Rule 42(b).  *See, e.g.*, *Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014); *Goldstein v. Am. States Ins. Co.*, No. 18-3163, 2018 WL 6198463, at *1–2 (E.D. Pa. Nov. 28, 2018).

Fullington names six defendants in this action, but he brings multiple claims against those defendants.  Although it appears that Fullington has brought at least 13 individual claims against the six defendants, some of Fullington's claims have multiple subparts, as each of the claims allegedly occurred on separate dates and require separate legal analysis for each subpart.  For example, although Fullington appears to allege six separate claims against Gilmore, one of those claims involves seven different dates and thus requires analysis of all the factual circumstances surrounding those claims for each different date.  In total, Fullington brings six separate allegations against Preston, and 35 separate allegations against Gilmore.  He brings four separate allegations against Carr, as well as two separate allegations each against Stanton, Precythe and Labon.  Fullington brings 41 allegations in total in his complaint, in direct contravention to the joinder rules set forth in Rules 18 and 20.

Because most of the claims in this lawsuit simply do not relate to Fullington's first enumerated claim regarding the opening of his legal mail, which purportedly occurred on or about May 16, 2023, by Preston, the Court severs and dismisses all claims from this lawsuit except for Fullington's claims against Preston.  *See* Fed. R. Civ. P. 21.

18

**C.    The Court orders Fullington to show cause why the Court should not dismiss his complaint because it appears that Fullington failed to properly exhaust his administrative grievances before filing this lawsuit.**

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Moreover, a prisoner must exhaust any available prison administrative remedies even if they do not provide the precise, or full, relief sought.  *Booth v. Churner*, 532 U.S. 731, 733–40 (2001); *see also Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002).  Prisoners must fully exhaust their prison remedies prior to filing a complaint in this Court.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so *properly* (so that the agency addresses the issue on the merits)" (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002))); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("If exhaustion was not completed at the time of filing, dismissal is mandatory."); *see also Hammett v. Cofield*, 681 F.3d 945, 948 (8th Cir. 2012) ("The MDOC Manual expressly prohibited reprisal against an inmate for using the grievance procedure and set forth detailed special grievance procedures for an inmate who 'believes that a reprisal has occurred.'").

Fullington claims that he filed a grievance relating to the allegations in his complaint. *See* doc. 1 at 6.  However, he indicates that he is still completing the steps of the grievance process.  *Id.* at 7.  He claims that the defendants have "greatly hinder[ed]" his "right to redress grievances," *id.*, but he fails to articulate what these defendants have done to hinder his exhaustion process, *see* doc. 1.  Moreover, Fullington has attached to his complaint a copy of the IRR he filed on May 27, 2023, regarding what he perceived as the denial of his constitutional

19

rights when Preston opened his mail from the IRS.  *See* doc. 1-1 at 11.  Fullington indicates that

he received an IRR form on May 25, 2023, which he used to file his first IRR.  Doc. 1 at 19.

Although Fullington turned in the IRR, all reviewing parties denied it in June 2023.  Doc.

1-1 at 12.  On June 11, 2023, Fullington filed a grievance regarding the mail issue.  *See id.* at 13.

On June 16, 2023, Warden Stanton provided a response to Fullington's grievance.  *Id.* at 14.  In

the response, Warden Stanton explained that the definition of "privileged mail" does not include

mail to and from the IRS.  *Id.*  Thus, "[p]er policy, it is to be opened an[d] inspected by the mail

room staff prior to being delivered to the offender."  *Id.*  Warden Stanton told Fullington that an

investigation into his complaint found no violations of policy or his rights, and that he considered

the matter resolved.  *Id.*  As noted on the "Offender Kite Response Form," however, Fullington

was allowed to file a grievance appeal of this matter.  Doc. 1-1 at 1.  But nothing in the record

indicates that he did so.  In fact, Fullington filed the instant action on August 21, 2023, within

two months after receiving Warden Stanton's response to the grievance.  Doc. 1.

Pursuant to the Missouri Department of Corrections Offender Rulebook, to properly

exhaust an IRR and grievance, an offender must file a grievance appeal.  *See* Missouri

Department of Corrections, *supra*, at 68 (outlining the grievance process); *see also Hammett*, 681

F.3d at 947.  An appeal response is provided to the offender within 100 days of receipt of the

grievance appeal.  *Hammett*, 681 F.3d at 947.  After receipt of the appeal response, the grievance

process is exhausted.

Given the record before the Court, it does not appear that Fullington has pursued his IRR

and grievance through all the steps of the grievance process.  *See Irving v. Ventura*, Case No. 20-

06101-CV-SJ-FJG-P, 2020 WL 5491689 (W.D. Mo. Sept. 2, 2020) (dismissing for failure to

exhaust when a plaintiff indicated on the face of the complaint that he filed a grievance only a couple of weeks before and had not yet received a formal answer).

Because Fullington is a prisoner and proceeding as a self-represented litigant, the Court will give him an opportunity show cause why the Court should not dismiss this action for failure to exhaust all his prison grievances prior to filing this action.  In so doing, Fullington should set forth the dates he filed his IRRs, grievances and appeals, if any, as well as the dates he received institutional responses.  Fullington should also attach copies of his IRRs, grievance, grievance appeal, and any written responses.  If he cannot obtain copies from the institution, Fullington must explain what attempts he has made to request these documents.  If Fullington fails to comply, the Court will dismiss this action without prejudice and without further notice.

### D.     The Court denies Fullington's motion for injunctive relief.

On August 21, 2023, Fullington filed a motion and a memorandum in support, asking the Court to issue a temporary restraining order or a preliminary injunction.  Docs. 5, 6.  He included a proposed order title "Order to Show Cause for Preliminary Injunction [or] Temporary Restraining Order."  Doc. 5-1.

Fullington "seek[s] to stop the unlawful actions that are causing personal injury and harm to [him]."  Doc. 5 at 1.  He asserts that the injuries he is suffering relate to the "lack of using reasonable care in allowing [him] to receive treatment as ordered by a physician."  *Id.* at 1–2.  Fullington also complains that unnamed persons have restricted his access to "movement," and he claims that the denial of his IRRs and grievances has continued.  Fullington seeks an order to stop defendants from "refusing the medical treatment as ordered by the institutional physician."  *Id.* at 7.  He also asks that the Court restrain defendants from denying him "movement" and restricting his privileges.  *Id.* at 8.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015) (citing *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012)); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986) (citing *Dataphase*, 640 F.2d at 113). The Court applies these same standards to both a request for a preliminary injunction and a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to a motion for a temporary restraining order).

In the prison context, the Court must view a request for injunctive relief with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). For an injunction to issue, "a right must be violated," and the Court must determine whether "a cognizable danger of future violation exists." *Id.* at 521 (quoting *Rogers*, 676 F.2d at 1214). Furthermore, the "danger must be more than a mere possibility." *Id.* (quoting *Rogers*, 676 F.2d at 1214). Courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a

22

violation is both real and immediate." *Id.* (quoting *Rogers*, 676 F.2d at 1214).  Fullington has the burden of proving that the Court should issue an injunction.  *See Mgmt. Registry, Inc. v. A.W. Cos*, 920 F.3d 1181, 1183 (8th Cir. 2019).

After reviewing the *Dataphase* factors as well as the factual circumstances relating to Fullington's motion for injunctive relief, the Court denies Fullington's motion.  Fullington is no longer incarcerated at NECC, nor is he subject to Preston's jurisdiction at NECC.  As such, his assertions relating to his medical care, lack of "movement" an loss of privileges, as well as any fears of retaliation, are unfounded and moot.  *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions" (citing *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978))).

Further, none of the allegations in his motion for injunctive relief are relevant to the matters currently being litigated in the present lawsuit given that the Court has severed and dismissed Precythe, Stanton, Gilmore, Carr and Labon from this action.  "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)). In this case, no relationship exists between the injury claimed in the motion for injunctive relief and the conduct asserted in the complaint.  Consequently, the Court denies the motion for preliminary injunction.

### E.    The Court denies Fullington's motions for appointment of counsel.

Fullington has filed two motions for appointment of counsel.  Docs. 4, 8.  The Court denies these motions.  "In civil cases, there is no constitutional or statutory right to appointed

counsel." *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (citing *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995)); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) ("A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." (citing *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985))).  Rather, the Court may appoint counsel in a civil case if "an indigent plaintiff has stated a non-frivolous claim," *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing 28 U.S.C. § 1915(e)), and "the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel, *id.* (quoting *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)).  When determining whether to appoint counsel for an indigent litigant, the Court considers relevant factors such as "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments."  *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006) (citing *Edgington*, 52 F.3d at 780).

The Court has considered these factors and finds that the appointment of counsel is not warranted at this time.  Fullington has demonstrated, at this point, that he can adequately present his claims to the Court.  Additionally, neither the factual nor the legal issues in this case appear to be complex.  Accordingly, the Court denies Fullington's motions for appointment of counsel.

## IV.  Conclusion

As explained above, the Court grants Fullington's [2] motion to proceed in forma pauperis.  The Court orders Fullington to pay an initial partial filing fee of $3.28 no later than April 8, 2024.  Fullington must make his remittance payable to "Clerk, United States District Court," and include upon it:  (1) his name; (2) his jail registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

The Court instructs the Clerk of Court to strike the following declarations of non-party litigants in this action:  Charles Fredrick, Charles Harris, Dale Bookwalter, Eric Grass, Tommy Speer and Vince Lamar.  *See* Fed. R. Civ. P. 7(a); Local Rule 3.02(A).  The Court severs and dismisses without prejudice Defendants Anne Precythe, Clay Stanton, Christine Gilmore, S. Carr and Leslie Labon.

The Court orders Fullington to show cause, no later than April 8, 2024, why the Court should not dismiss this case for failure to fully exhaust administrative remedies before filing claims against Taylor Preston.  Fullington must include in his show-cause response the dates that his IRRs, grievances and grievance appeals were denied, and attach copies of such documents.  If Fullington fails to timely comply with this order, the Court may dismiss this case without further notice.  In the light of its show-cause order, the Court hold its Section 1915 review of Fullington's claims against Preston in abeyance.

The Court denies Fullington's motions for appointment of counsel, docs. 4, 8.  The Court also denies Fullington's motion for injunctive relief, doc. 5, without prejudice.

The Court finds that an appeal of this Order would not be taken in good faith.  An order of partial dismissal accompanies this Memorandum and Order.

So ordered this 18th day of March 2024.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE